**SO ORDERED.**

**SIGNED this 16 day of October, 2009.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

**IN RE:**

**JOHN HENRY WINGEN, JR.,**                    Case No. 08-03554-8-JRL

      **Debtor.**

---

| | |
|---|---|
| **HOLMES P. HARDEN, Chapter 7** ) | |
| **Trustee for John Henry Wingen, Jr.,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
|     vs. ) | **ADVERSARY PROCEEDING** |
| ) | **NO. 09-00013-8-JRL** |
| **SUSAN NIEMCHAK,** ) | |
| ) | |
|     **Defendants.** ) | |

## ORDER

This case came before the court on the trustee's motion for summary judgment filed on July 31, 2009. On September 16, 2009, the court conducted a hearing on this matter in Raleigh, North Carolina.

### JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the

United States District Court for the Eastern District of North Carolina on August 3, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## UNDISPUTED FACTS

1.  John Henry Wingen, Jr. (the "Debtor") filed a voluntary petition in bankruptcy under Chapter 7 of the United States Bankruptcy Code on May 27, 2008.

2.  The Debtor married Susan Niemchack (the "Defendant") in October of 2006.

3.  On April 16, 2007, the Defendant refinanced a residence located at 2112 Prescott Place, Raleigh, North Carolina 27615 ("Raleigh House").  At the time of the refinancing, the Raleigh House was owned by the Debtor and the Defendant as tenants by the entirety.  The refinancing note was made solely in the Defendant's name and the Defendant received $85,796.87.  The Debtor also executed the deed of trust securing the note.

4.  Between April 16, 2007, and August 28, 2007, the Defendant used the Raleigh House refinancing proceeds to pay debts solely owed by the Debtor or jointly owed by the Debtor and herself.

5.  On August 28, 2007, the balance remaining out of the original $85,796.87 refinancing proceeds was $11,356.23.

6.  On August 28, 2007, within two years prior to the commencement of the Debtor's Chapter 7 bankruptcy, Debtor transferred to the Defendant, a one-half interest in a beach house located at 112 North Sea Isle Drive, Indian Beach, North Carolina 28575 ("Beach House").  The Debtor made the transfer by quitclaim deed.  This transfer constituted a transfer of an interest in Debtor's property under 11 U.S.C. § 548.

7. On August 28, 2007, the Debtor was unemployed.

8. Debtor's liabilities in August 2007 included $80,000 to $90,000 in credit card debt, two promissory notes in the approximate total amount of $118,702, and a pending arbitration claim of that was reduced to a judgment of $115,000 in December 2007.

9. After the transfer on August 28, 2007, Debtor's sole nonexempt assets were his one-half interest in the Beach House and a $10,400 equity interest in the Raleigh House.

10. Debtor received no monetary interest in exchange for the transfer of the one-half interest in the Beach House.

11. Defendant paid approximately $36,000 in household expenses including mortgage payments and utilities relating to the Beach House from October 2006 to October 2007.

12. Six weeks after the transfer, the Beach House was sold on October 7, 2007. The Defendant and the Debtor each received approximately $98,914.76, representing their respective one-half interests, from the proceeds of the sale of the Beach House.

13. The Debtor deposited his share of the proceeds into his personal account for the benefit of his ex-spouse, Sheresa Wingen, and children.

14. Defendant used the proceeds from the sale to pay expenses owed solely by the Debtor and jointly by the Debtor and the Defendant.

15. On January 14, 2009, the Trustee of the Debtor's bankruptcy estate filed an adversary proceeding seeking to avoid and recover the Debtor's transfer of a one-half interest in the Beach House to the Defendant. The Trustee filed a motion for summary judgment on this adversary proceeding on July 31, 2009.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

The Bankruptcy Trustee in this case moves for summary judgment on a claim to avoid the Debtor's transfer of a one-half interest in the Beach House to his wife, the Defendant. The Trustee seeks to avoid the transfer under § 548 of the Bankruptcy Code. This section allows a Trustee to avoid transfers made within two years of the bankruptcy filing under two separate circumstances. First, § 548(a)(1)(A) allows a Trustee to avoid a transfer that is made "with actual intent to hinder, delay, or defraud" a creditor. 11 U.S.C. § 548(a)(1). Second, § 548(a)(1)(B) allows a Trustee to avoid a transfer of an interest in the debtor's property if the debtor (1) "received less than a reasonably equivalent value in exchange for such transfer" and (2) was insolvent on the date of transfer or became insolvent as a result of it.

With regard to the Trustee's claim for transfer avoidance based on § 548(a)(1)(A), the court finds that summary judgment is improper. Based on the Defendant's affidavit addressing the good faith intention behind the transfer of the Beach House, the Defendant's marriage to the Debtor within a year prior to the transfer, and due to the fact that discovery has yet to be commenced in this adversary proceeding, the court finds that the Defendant has a colorable theory that the transfer was not made with the requisite intent to defraud creditors under § 548(a)(1)(A). Therefore, material questions of fact remain with regard to the Debtor's actual intent to defraud creditors, which precludes summary judgment with respect to § 548(a)(1)(A).

Transfer avoidance under § 548(a)(1)(B) presents a more novel issue in this case. The transfer of the one-half interest in the Beach House from the Debtor to the Defendant did not include any documentation of consideration transferred from the Defendant to the Debtor. As a result, the court must rely on the Defendant's explanation as to what, if any, reasonably equivalent value the Debtor received as a part of the transaction. The Defendant argues that the reasonably equivalent value came in the form of (1) satisfaction of an antecedent debt to the Defendant created by the Defendant's payment of the Debtor's sole debts and debts held jointly between the Debtor and the Defendant (between April 16, 2007 and August 28, 2007), and (2) the Defendant's agreement to pay Debtor's creditors subsequent to the transfer and sale of the Beach House. The court finds these arguments unpersuasive.

Nothing in the record ties the Defendant's antecedent payments of the Debtor's expenses to the transfer of interest in the Beach House at the time of the transfer. For the transfer to be unavoidable, under § 548(a)(1)(B), the Debtor must have received at least a reasonably equivalent value "*in exchange*" for the transfer. Furthermore, the court must examine the

5

exchange of value on the date of the transfer.  See In re Morris Communications N.C., Inc., 914 F.2d 458 (4th Cir. 1990) ("The date of defining such reasonable equivalence is the date of the transfer").  The Debtor's self-serving statement, absent any corroborating documentation, that the Debtor's transfer of a one-half interest satisfied antecedent debts does not provide sufficient evidence of an exchange at the time of the transfer.[1]  Therefore, the court rejects the notion that the Debtor received any reasonably equivalent value for the satisfaction of allegedly antecedent debts to the Defendant.

Under the most liberal construction of the Code, the Defendant's subsequent payment to the Debtor's creditors using the sale proceeds of the one-half transferred interest in the Beach House could be considered an exchange for reasonably equivalent value.  See Moister v. Eidson (In re Eidson), 10 B.R. 432 (N.D. Georgia) (recognizing an exchange of reasonably equivalent value for the payment of a debtor's creditors subsequent to the transferee's receipt of a one-half interest in debtor's property).  However, even under this construction, the Debtor received less than a reasonably equivalent value for his transfer to the Debtor.  In *Moister*, an insolvent debtor transferred his one-half interest in a house to his wife, who previously owned a corresponding half-interest, for nominal cash consideration.  Id. at 433.  Subsequent to the transfer, the wife used the property to obtain a loan, which she used in full to pay the debtor's creditors.  Id. at 434.

---

[1] Even if the record were to reflect that, at the time of transfer, the Defendant forgave the Debtor of his antecedent debt, the value received by the Debtor would have been nominal in comparison to the value of the one-half interest in the Beach House. At best, the Defendant paid $3,062.00 of debts solely owed by the Debtor prior to the transfer. Exhibit A of Defendant's affidavit itemizes payments made directly to Debtor's sole creditors from April 16, 2007 to August 28, 2007 as follows:

| Date | Amount Paid | Description |
| --- | --- | --- |
| 5/11/07 | $700.00 | Capital One Charge on Debtor's Account |
| 7/16/07 | $1,160.00 | Online payment of Debtor's MBNA credit card |
| 7/16/07 | $1,202.00 | Online payment of Debtor's MBNA credit card |

The court treated the amounts paid to creditors as a reasonably equivalent value in exchange for the transfer of the one-half interest.  Id.  Under *Moister*'s construction, the Defendant's use of the sales proceeds from the Beach House to pay the Debtor's sole creditors may be considered value in exchange for the transfer that the Trustee seeks to avoid.  Exhibit A of the Defendant's affidavit indicates that after receiving $98,914.76 in proceeds from the sale of the Beach House, the Defendant paid Debtor's sole debts in the amount of $58,315.66.[2]  The remaining proceeds from the sale were used to pay joint expenses shared by the Debtor and Defendant as husband and wife.  The court will not consider joint expenses as part of any value received by the Debtor because these expenses go to the mutual benefit of Defendant and Debtor and not to the exclusive benefit of the Debtor.  The Debtor, therefore, received less than 60% of the marketable value of property in his exchange with the Defendant. Furthermore, the Defendant knew the full value of her interest upon the sale of the Beach House, yet returned the Debtor substantially less than this known value.  In light of these circumstances, the court finds that under even the most liberal construction of § 548(a)(1)(B) the Debtor did not receive a reasonably equivalent value in exchange for the interest he transferred to the Defendant.

---

[2] Exhibit A of Defendant's affidavit itemizes payment of Debtor's sole debts after the sale of the Beach House on October 22, 2007 as follows:

| Date | Amount | Description |
| --- | --- | --- |
| 10/26/07 | $19,614.99 | Payoff for Debtor's Wachovia Overdraft Account |
| 10/29/07 | $11,945.00 | Payoff for Debtor's Capital One Credit Card |
| 10/29/07 | $2,000.00 | Discover Card Payment for Debtor |
| 11/23/07 | $15,000.00 | Payment to Stacey Wingen (Debtor's sister) |
| 12/14/07 | $400.00 | Discover Card Payment for Debtor |
| 12/26/07 | $101.67 | Wake Co. Rev. Dept. (John's Car) |
| 12/27/07 | $200.00 | Online payment Debtor's Credit Card (Barclay's) |
| 3/13/08 | $9,054.00 | Payment to Sheresa Wingen (Debtor's ex-wife) |

Transfer avoidance under § 548(a)(1)(B) also requires that the Debtor was insolvent at the date of transfer or became insolvent as a result of the transfer. The Bankruptcy Code defines "insolvent" as the existence of a "financial condition such that the sum of [the debtor's] debts is greater than all of [the debtor's] property, at a fair valuation." 11 U.S.C. § 101(32)(A). In determining whether a debtor is insolvent, the court employs a "balance sheet" test whereby the debtor is insolvent when its liabilities exceed the fair value of its assets. See Solomon v. Kirtley (In re Solomon), 299 B.R. 626, 638-39 (10th Cir.). This calculation is exclusive of property exempted or fraudulently transferred. § 101(32)(A). Immediately after the transfer of the one-half interest in the Beach House, the Debtor had assets equal to the sum of his $10,400 equity interest in the Raleigh House and his remaining one-half interest in the Beach House, which was subsequently valued at $98,914.76. The sum of these two assets equals $109,314.76. The sum of the Debtor's liabilities at the time of transfer was approximately $313,702, which exceeds the value of the Debtor's assets. Even if the court were to exclude the pending arbitration claim (which was later reduced to a judgment of $115,000) from the calculation of the Debtor's liabilities, the sum of liabilities at the time of transfer would still exceed the sum of the Debtor's assets. Therefore, the Debtor was insolvent at the time of transfer for purposes of § 548(a)(1)(B)(ii).

Because the Debtor was insolvent at the time of the transfer of the one-half interest in the Beach House and the Debtor did not receive a reasonably equivalent value in exchange for the transfer to the Defendant, the Trustee may avoid the transfer under § 548(a)(1)(B).

## CONCLUSION

Based on the foregoing, the plaintiff's motion for summary judgment is **DENIED** with

respect to the allegation of actual fraud under § 548(a)(1)(A) and **GRANTED** with respect to the allegation of constructive fraud under § 548(a)(1)(B).

"END OF DOCUMENT"